**Below is the Order of the Court.**

*Paul B. Snyder*
_____
**Paul B. Snyder**
**U.S. Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>BRIAN JOHN BRYCE and<br>CATHERINE GRACE BRYCE,<br><br>                         Debtors. | **Case No. 09-48516** |
| BRIAN JOHN BRYCE and<br>CATHERINE GRACE BRYCE,<br><br>                         Plaintiffs,<br><br>v.<br><br>BRETT LAWRENCE and JANE DOE LAWRENCE, husband and wife and their marital community; JAMES SPOONER and JANE DOE SPOONER, husband and wife and their marital community; and EXCEL FUNDING, INC., a corporation licensed to do business in the State of Washington,<br><br>                        Defendants. | **Adversary No. 10-04099**<br><br>**MEMORANDUM DECISION ON JOINT APPLICATION FOR COMPENSATION OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS**<br><br>**NOT FOR PUBLICATION** |

This matter comes before the Court on a Joint Application for Compensation of Attorneys' Fees and Reimbursement of Costs (Joint Application) filed by Brian and Catherine Bryce (Plaintiffs/Debtors). Based on the pleadings and arguments presented, the Court's findings of fact and conclusions of law are as follows:

MEMORANDUM DECISION ON JOINT APPLICATION
FOR COMPENSATION OF ATTORNEYS' FEES
AND REIMBURSEMENT OF COSTS - 1

# I

## PROCEDURAL HISTORY

The Plaintiffs filed a Chapter 13 petition in U.S. Bankruptcy Court for the Western District of Washington on November 12, 2009. On January 14, 2010, Defendant Brett Lawrence filed a proof of claim in the Plaintiffs' bankruptcy case in the amount of $145,552.55 (Proof of Claim). On April 27, 2010, the Plaintiffs filed the present adversary proceeding.

Trial was held in this matter on September 10, 11, and 12, November 19 and 20, and December 14, 2012. At trial, the Plaintiffs pursued multiple claims against the Defendants. These claims can be broken down into three categories: federal statutory claims, Washington State statutory claims and Washington State common law claims. The federal statutory claims are for violations of the Truth in Lending Act (TILA), Home Ownership Equity Protection Act (HOEPA) and Real Estate Settlement Protection Act (RESPA). The Washington State statutory claims are for violations of the usury statute, Mortgage Brokers Practices Act (MBPA), and Consumer Protection Act (CPA). The Washington State common law claims are for unconscionability, civil conspiracy, breach of fiduciary duty, misrepresentation and fraud, breach of the duty of good faith and fair dealing, breach of contract and for attorney's fees.

On March 1, 2013, the Court entered a Memorandum Decision and Judgment awarding the Plaintiffs damages for violations of TILA in the amount of $2,000, HOEPA in the amount of $22,260.89, RESPA in the amount of $1,180 and the Washington State usury statute and MBPA through the CPA in the amount of $43,540, for a total damage award of $68,980.89 to be set-off against Lawrence's Proof of Claim. On May 2, 2013, Lawrence filed an Amended Proof of Claim. The Proof of Claim amount has not yet been determined. In the March 1, 2013 Judgment, the Court indicated that the issue of whether any additional relief is warranted, including any entitlement to attorneys' fees, shall be separately noted for hearing.

The Plaintiffs filed the Joint Application on August 2, 2013. In the Joint Application, the Plaintiffs seek an award of the following fees and costs: (1) to Impact Law Group (Impact Law) in the amount of $55,996.74, plus costs of $1,782.74, in affirmative relief, and an amount limited to offset the Proof of Claim filed by Defendant Lawrence in the amount of $2,725; (2) to the Law Offices of Antoinette Davis (Davis Law) in the amount of $74,077.07, plus costs of $723.24, in affirmative relief, and an amount limited to offset the Proof of Claim in the amount of $3,634; and (3) to Guidance to Justice Law (Guidance) in the amount of $43,625, plus costs of $2,290.08, in affirmative relief, and an amount limited to offset the Proof of Claim of $1,250.

In the Reply in Support of Joint Application for Compensation of Attorneys' Fees and Reimbursement of Costs, additional fees were sought for the time expended in bringing the Joint Application. Subsequent to the September 6, 2013 hearing, supplemental declarations were filed by each of the applicants to which time records were attached to support the request. The Defendants filed a response to the supplemental fee requests.

**II**

**DISCUSSION**

The Plaintiffs seek an award of attorneys' fees incurred in pursuing only the causes of action for which they were successful. Accordingly, the Plaintiffs seek an award of fees incurred in litigating the TILA (except for rescission), HOEPA, and RESPA (for failure to respond to the Qualified Written Request) claims, and the MBPA and usury claims through the CPA.

An award of fees related to the TILA and HOEPA causes of action are being sought pursuant to 15 U.S.C. § 1640(a)(3). This section authorizes "the costs of the action, together with a reasonable attorney's fee as determined by the court" in the case of any "successful action." Similar language authorizes an award of reasonable costs and fees in a successful RESPA action. 12 U.S.C. § 2605(f)(3). Pursuant to RCW 19.86.090, any person injured by a

MEMORANDUM DECISION ON JOINT APPLICATION
FOR COMPENSATION OF ATTORNEYS' FEES
AND REIMBURSEMENT OF COSTS - 3

violation of the CPA can recover their actual damages, together with the costs of the suit, including reasonable attorney's fees. In its March 1, 2013 Memorandum Decision, the Court determined that the Defendants committed a per se violation of the CPA in violating the MBPA and state usury statute. An award of reasonable attorney's fees and costs is therefore appropriate under RCW 19.86.090.

Prior to evaluating the specifics of the Joint Application, there are several preliminary matters that were discussed at the September 6, 2013 hearing and either agreed to by the parties or ruled on by the Court. The Court will briefly address each of these points in this Memorandum Decision.

### A. Preliminary Matters

#### 1. Liability

Although there are several named Defendants in this adversary proceeding, the Plaintiffs stated at the September 6, 2013 hearing that relief is only being sought in the Joint Application against Defendant Lawrence and his marital community. No relief is being sought against the remaining Defendants or the separate property of Jane Doe Lawrence, who was dismissed from this proceeding by Court order entered February 14, 2011 (ECF No. 50).

#### 2. Affirmative Relief

In evaluating the Joint Application, one issue that arose was the distinction between the Plaintiffs' entitlement to affirmative relief as opposed to limiting relief to an offset of any fees awarded against Defendant Lawrence's Proof of Claim. The Plaintiffs acknowledge that they are not entitled to any affirmative relief regarding the causes of action that are barred by the statute of limitations.

At the hearing, the parties acknowledged that the issue of affirmative relief is dependent upon the Proof of Claim. The total amount of the Proof of Claim has not yet been determined.

By agreement, the Court will first reduce the Proof of Claim by the amount of fees and costs awarded, and then revisit the issue of affirmative relief if necessary.

### 3. Chapter 13 Bankruptcy Fees

In the Joint Application, the Plaintiffs seek an award of fees both for services performed in the Plaintiffs' underlying Chapter 13 case and in the adversary proceeding. Although it is difficult to determine from the time records submitted which time entries are for services unrelated to the adversary proceeding, based on the charts prepared by the applicants, the evidence indicates that Impact Law seeks $4,993.45 in fees and Guidance $5,800 in fees and $500 in costs, for a total award of Chapter 13 fees and costs in the amount of $11,293.45. Although such fees may be payable in the context of the Chapter 13 case, the Plaintiffs have not provided any basis for an award of such fees in the adversary proceeding to be paid by Defendant Lawrence. Accordingly, such fees are denied without prejudice to seeking approval in the underlying Chapter 13 case in compliance with the Bankruptcy Code and Local Rules, including 11 U.S.C. § 330 and Local Rules W.D. Wash. Bankr. 2016-1.

### 4. Allocation Between Applicants

Although Plaintiffs' counsel are now associated with three separate law firms, a Joint Application was filed. As indicated by the Court at the September 6, 2013 hearing, any reductions are to the Joint Application as a whole. In this Memorandum Decision, the Court is not making an allocation as to individual fee request reductions.

## B. Lodestar Analysis

The general rule in our legal system is that each party must pay its own attorney's fees and expenses. Congress has created an exception in federal fee-shifting statutes, such as 15 U.S.C. § 1640(a)(3) and 12 U.S.C. § 2605(f)(3), to ensure that federal rights are adequately enforced. The same is true of the fee-shifting provisions of RCW 19.86.090.

In determining the reasonable amount of attorney's fees to be awarded under federal and state fee-shifting statutes, the court is to conduct a lodestar analysis. A lodestar approach calculates a reasonable attorney fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546, 130 S. Ct. 1662, 1669 (2010). This calculation results in a "presumptively reasonable" fee award. Morales v. City of San Rafael, 96 F.3d 359, 363-64 (9th Cir. 1996).

While courts have considerable discretion in determining the amount of a fee award, they must explain the weight given to each factor considered. The applicant bears the burden of proof to establish that its hourly rate and hours expended are reasonable. Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

In calculating the lodestar, the Court must first determine whether the hourly billing rate is reasonable. The Court determines the appropriate hourly billing rate by evaluating the prevailing market rate in the relevant legal community. In this case, the hourly billing rate for Ms. Darling Hill of Impact Law is stated as $250 per hour and $260 per hour effective January 1, 2013. The hourly billing rate for Davis Law is $350 per hour for Ms. Davis and $250 per hour for Ms. Hernandez. The hourly billing rate for Ms. Anderson of Guidance is $250 per hour.

At the hearing on September 6, 2013, the Defendant was asked by the Court whether he had any objection to the hourly billing rates of Plaintiffs' counsel. The Defendant indicated that he objected to the rate of Ms. Davis, arguing that no explanation was provided as to why a higher rate for her services was necessary. This, however, is not the standard. The issue is not whether it was appropriate for her to charge an hourly rate higher than her co-counsel, but whether her rate is appropriate based on the prevailing market rate in the relevant legal community. No evidence has been provided that $350 per hour exceeds the prevailing rate in the Tacoma/Seattle area. It is the Court's experience that $350 is within the prevailing rates,

and no contrary evidence has been provided. The Court concludes that the hourly billing rate for each applicant is reasonable.

Based on the nature of this case, the more difficult analysis is determining whether the hours expended were reasonable. Awarding fees in consumer protection cases such as this is a difficult task. This is particularly true where numerous causes of action are pled covering multiple areas of the law, including several federal and state statutes, as well as state common law, all within the context of a federal bankruptcy case. In evaluating this request, the Court is also mindful of the purpose behind the federal and state statutes, which dictates that such statutes are to be construed liberally in favor of the consumer in order to ensure that consumers are able to attract competent counsel and that their rights are protected. With such parameters in mind, the Court has evaluated the Joint Application in detail and will address each of the objections raised by the Defendant.

### 1. **Fees Unrelated to Successful Causes of Action**

The Plaintiffs admit that they are only entitled to recover their fees and costs related to the causes of action for which they prevailed. The Plaintiffs indicate that counsel has deducted any fees contained on their billing documents they were able to identify as relating solely to unsuccessful causes of action. As stated earlier, the Plaintiffs prevailed on the following: TILA (with the exception of the rescission claim), HOEPA, RESPA (for failure to respond to the Qualified Written Request), and the MBPA and usury statute through the CPA. Of the causes of action alleged in the complaint, the Plaintiffs were unsuccessful on their causes of action for unconscionability, civil conspiracy, breach of fiduciary duty, misrepresentation/fraud, breach of the duty of good faith and fair dealing, and breach of contract. The Plaintiffs also failed to prevail on some of the claims asserted under TILA and RESPA, and only prevailed on the usury and MBPA claims through the CPA. The Amended Complaint filed on September 17, 2010, also asserted a claim for breach of the Washington State Consumer Loan Act, which

was later voluntarily dismissed by the Plaintiffs. The Defendant argues that the Joint Application improperly includes fees for time spent on unsuccessful causes of action.

It is generally accepted under Washington State law, that a court may award attorney fees pursuant to fee-shifting statutes such as RCW 19.86.090, for only that portion of the lawsuit for which fees are authorized. When only some portion of the lawsuit supports an award of attorney fees, a court must segregate, to the extent possible. See Kastanis v. Educ. Emps. Credit Union, 122 Wn.2d 483, 501-02, 859 P.2d 26, 36 (1993). The court however, is not required to artificially segregate time in a case where the causes of action all relate to the same fact pattern, but allege different bases of recovery. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 692-93, 132 P.3d 115, 123 (2006). A similar approach is taken by courts under the federal statutes. See Bradford v. HSBC Mortg. Corp., 859 F.Supp.2d 783, 792-93 (E.D. Va. 2012).

In this case, although some of the time could be and was segregated, the Court agrees with Plaintiffs' counsel that each of the claims, whether ultimately prevailed on, were based on the same fact pattern concerning the mortgage transaction. Accordingly, presentation of the same facts was necessary whether the Plaintiffs alleged only one cause of action or multiple. The Court therefore agrees with the Plaintiffs that segregation is required only to the extent possible.

The Plaintiffs represent that they have removed all time entries that they were able to identify as related to unsuccessful causes of action. In reviewing the time records, it is apparent that such an effort was made in the applications of Impact Law and Davis Law. As pointed out by the Court at the September 6, 2013 hearing, the time records submitted by Guidance, however, include several obvious entries for causes of action that were unsuccessful. Such time entries are easily identifiable and should not have been included in

MEMORANDUM DECISION ON JOINT APPLICATION
FOR COMPENSATION OF ATTORNEYS' FEES
AND REIMBURSEMENT OF COSTS - 8

the fee request. Ms. Anderson acknowledged that such time should have been redacted at the September 6, 2013 hearing.

For instance, on September 15, 2011, Ms. Anderson seeks an award for 4.0 hours in time ($1,000) identified as "E-mail correspondence with Tonie and Taryn regarding response SMJ on Misrepresentation." Other examples include: 2.0 hours ($500) identified as relating to the "TILA 3 day right to rescind" on September 18, 2011; 3.0 hours ($750) on September 22, 2011, regarding "unconscionability argument;" 1.5 hours ($375) on September 1, 2012, described as analysis of "Consumer Loan Act Claim;" 5.0 hours ($1,250) on January 6, 2013, "Re wrote and review cases for fiduciary duty argument." Such time entries relate to services provided regarding unsuccessful causes of action, and the Plaintiffs are not entitled to a fee award for these services.

Other time entries are less clear. For instance, on January 6, 2013, Ms. Anderson charged 4.0 hours of time ($1,000), for services that include analysis on usury and the MBPA as well as civil conspiracy and fiduciary duty. Although it is not possible from this description to determine what portion of the 4.0 hours was spent analyzing successful claims, it is clear that some portion is not compensable. The Court will therefore disallow fifty percent of this time. Based on the Court's review of Ms. Anderson's time records, the Court will reduce the amount sought by $4,375 as related to unsuccessful claims that are easily segregated.

**2. Multiple Attorneys**

Counsel from three separate law firms have billed for their services in this litigation, although at the commencement of the case, all worked for the same employer. The Defendant argues that this was a simple lawsuit and that it was unreasonable for multiple attorneys to be involved in this litigation, each billing for their time.

There is no per se prohibition against multiple attorneys working on and billing for services provided. This Court recognizes that depending on the complexity of the litigation,

dividing the work among several attorneys may, but is not always, the most efficient. In cases such as this where no fees are being paid by the client, it may be necessary to utilize multiple attorneys to spread out the risk of non-payment. However, in order to be compensated for multiple attorneys, the burden is on the moving party to show "that the time spent by those attorneys reflects the distinct contribution of each lawyer." Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 432 (11th Cir. 1999).

The Court disagrees with the Defendant that this was a simple lawsuit. In addition to the multiple outlying issues raised, including those of recoupment and rescission, issues of liability and damages were very complex. The Court agrees with the Plaintiffs that it was reasonable in this case to utilize multiple attorneys, each with their own areas of expertise. The Plaintiffs indicate that although some overlap was unavoidable, each attorney was primarily responsible for different causes of action. Based on the time records submitted and the Court's recollection of how the case was presented and argued at trial, the Court finds this explanation to be credible.

Although utilization of multiple attorneys may have been reasonable, the Defendant, however, should not be required to pay for duplicative services. Despite the fact that fees are not being awarded pursuant to 11 U.S.C. § 330, this Code section provides some guidance in determining a "reasonable" fee award in the bankruptcy context. Pursuant to this section, the Court is not to award fees for the "unnecessary duplication of services." 11 U.S.C. § 330(a)(4).

The time records submitted contain multiple time entries for conferences, meetings and emails between the three co-counsel. Normally, it is appropriate for only one attorney to bill for such time. See, e.g., In re Grosswiler Dairy, Inc., 257 B.R. 523, 531 (Bankr. D. Mont. 2000) (entries for "attorney office conferences must be intricately scrutinized" and will be "disallowed where they involve duplication of effort"). The Court does not question that the time was incurred. Rather, the issue is whether the time was reasonable. The burden is on the

applicant to demonstrate that it was reasonable for multiple attorneys to each bill for time spent conferencing with one another.

The time records in this case are difficult to evaluate. In many instances, the time records do not match up as to the time spent conferencing or even the date the communication occurred. For instance, on September 2, 2011, Ms. Darling Hill indicates that .5 hours ($125) was spent in case status discussions with Ms. Davis. Ms. Davis's time records, however, list no discussion with Ms. Darling Hill on that date. Rather, Ms. Davis's time records instead indicate .2 hours ($70) of time conferring with Ms. Darling Hill and Ms. Anderson on September 7, 2011, and .3 ($75) incurred emailing the same.[1] Neither of these dates appear on Ms. Anderson's time records. The same is true of the time entries for February 1 and 2, 2012. Ms. Darling Hill lists .5 hours ($125) on February 1, 2012, in a meeting with Ms. Davis to "discuss settlement and further possibilities for mediation and case strategy." Ms. Davis shows no time on February 1, 2012, but indicates .8 ($280) on February 2, 2012, conferring with Ms. Darling Hill "regarding continuing settlement discussions." These are only a few examples of the many inconsistencies in the time records provided. The amounts at issue are relatively minor, however, the inaccuracies put the veracity of the time records as a whole at issue.

The most significant discrepancy involves a conference that apparently occurred between all three applicants at the end of August 2012. According to Ms. Darling Hill's records, 3.7 hours ($925) was spent planning trial strategies with Ms. Davis, Ms. Hernandez and Ms. Anderson on August 25 and another 3.7 hours ($925) on August 27, 2012. Ms. Hernandez is apparently another attorney in Ms. Davis's firm. Ms. Davis lists 3.5 hours ($875) for a trial strategy meeting on August 18, 2012, between the same parties, and Ms. Hernandez lists 3.5 hours ($875) on August 25, 2012. The only conference Ms. Anderson's time records list during

---

[1] No explanation was provided by Ms. Davis as to why some of her time was billed at her normal hourly rate of $350 and some time was billed at an hourly rate of $250.

MEMORANDUM DECISION ON JOINT APPLICATION
FOR COMPENSATION OF ATTORNEYS' FEES
AND REIMBURSEMENT OF COSTS - 11

this time period is between these same parties on August 25, 2012, for which she lists 3.0 hours ($750). Based on the inaccuracies, the Court is unable to evaluate the time spent in such conferences to determine whether it was reasonable for all four attendees to bill for this time. As the burden is on the applicant, the Court determines that an across the board reduction is the only fair method for allowing reasonable compensation for this time and that a reduction of fifty percent is appropriate. As four parties were billing for this time, a fifty percent reduction is arguably generous. The total fees for the conferences listed above total $4350 ($750 for Ms. Anderson, $875 for Ms. Davis, $875 for Ms. Hernandez and $1850 for Ms. Darling Hill). Accordingly, the Court will reduce the Joint Application by $2,175.

Ms. Anderson's time records in particular raise additional issues related to the multiple attorney issue as few details are provided. Ms. Anderson's time records contain approximately 64 entries listing .2 hours of time for services described as an "e-mail correspondence" with at least one of her co-counsel. For each of these entries, no other information is provided from which the Court can determine the nature of the services provided. Based on the lack of detail, the Court determines that her burden has not been met to establish that an award for these services is reasonable. At her rate of $250 per hour, the attorney fees related to these services equal $3,200, and the Joint Application is accordingly reduced.

Also at issue is whether it was appropriate in this case for multiple attorneys to bill for time attending the same hearing, including trial time. The trial in this case lasted six days. Each of Plaintiffs' counsel attended trial on the same days and billed for all of their time. As stated above, this was a complex case, and the Plaintiffs' explanation that each counsel's services were necessary due to their expertise is credible. It was also evident that counsel divided the work among one another in an effort to avoid duplication. The Court does not question the general quality of the services provided or the fact that such hours were expended. The Court's difficulty is with the inconsistencies that once again appear in the

supporting time records. For example, for attending the trial on September 10, 11 and 12, 2012, Ms. Darling Hill seeks compensation for 20.3 hours of time and Ms. Davis for 20.5 hours. This discrepancy is minor. Ms. Anderson's time records, however, inexplicably list trial time of 28 hours ($7,000) for September 10-13. No trial took place on September 13th, and no explanation was provided as to why she is billing for 28 hours when her co-counsel billed for only 20.3 to 20.5 hours. Accordingly, Ms. Anderson will be limited to compensation for attendance at trial on those dates of 20.3 hours, which is the time specified by Ms. Darling Hill. At her hourly rate of $250, her fees for this portion of the trial equal $5,075. This results in a further reduction to the Joint Application of $1,925 ($7,000-$5,075).

On the issue of trial attendance, Ms. Davis seeks $5,425 for 15.5 hours at trial on November 19 and 20, 2012, yet also bills for trial attendance on those same days by another attorney in her firm (Rebecca Hernandez). The time records seek an award for Ms. Hernandez's attendance at the trial of 14 hours. At her hourly rate of $250 per hour, this totals $3,500. No explanation has been provided as to what services Ms. Hernandez provided and why it is reasonable for the Defendant to pay for her attendance at the trial, along with three other co-counsel. Accordingly, her fees in the amount of $3,500 for attendance at the trial are disallowed.

### 3. **Clerical Time**

It is not appropriate to seek payment of clerical services as attorney fees. Such fees are not in the nature of professional services and must be absorbed by the applicant's firm as an overhead expense. See Sousa v. Miguel, 32 F.3d 1370, 1374 (9th Cir. 1994). Ms. Anderson's time records in particular contain multiple time entries that appear to be clerical in nature. For instance, Ms. Anderson's time records contain approximately 26 entries between September 3, 2012 and July 16, 2013 described as either E-mail correspondence with "ecfwebmaster@wawb.uscourts.gov" or "Shawn_Utley@wawb.uscourts.gov." No further

explanation is provided from which the Court could determine that such fees are not clerical in nature and should be billed at an attorney rate. For each of these emails, Ms. Anderson indicates that .2 of time was spent which equals $50 per entry. The fees related to these services total $1,300. Although the Court does not dispute that the services were provided, the applicant has failed to meet her burden in demonstrating that such fees are compensable as professional services that the Defendant should be required to pay. Compensation for these entries is disallowed.

### 4. **Failure to Obtain Court Approval**

The Defendant argues that Ms. Anderson is not entitled to any fees because her employment was never approved by the Court. The fees at issue, however, are fees to be paid by Defendant Lawrence in the context of this adversary proceeding, not fees to be paid by the estate. The Court is reserving the issue of the allowance of any fees incurred for services provided in the main bankruptcy case. The Court would note, however, that Court approval is not required for employment of debtor's counsel in a Chapter 13 case. See 11 U.S.C. § 327. Although her employment may become an issue at a later point in these proceedings, it is not a bar to recovery against the Defendant.

### 5. **Supplemental Fee Requests**

The applicants have requested an award of supplemental fees for services provided in making the fee application. The following supplemental fees have been requested: $3,276 by Impact Law; $4,100 by Davis Law; and $1,575 in fees and $44.09 in costs by Guidance, for total supplemental fees and costs of $8,995.09.

Fees incurred in connection with preparation of a fee application are compensable. See In re Nucorp Energy, Inc., 764 F.2d 655, 662 (9th Cir. 1985). Such fees, however, are subject to the same lodestar analysis and the burden remains on the applicant to show that the hourly rate and hours expended are reasonable.

MEMORANDUM DECISION ON JOINT APPLICATION
FOR COMPENSATION OF ATTORNEYS' FEES
AND REIMBURSEMENT OF COSTS - 14

Based on the time records submitted, the combined time spent on the various fee applications by counsel total 31.7 hours. Although those hours were expended, it is not reasonable to seek compensation for 31.7 hours in making a fee request. The Court recognizes that Ms. Darling Hill, in particular, has already voluntarily reduced her fee request for multiple attendees and conferences with co-counsel; a further reduction, however, is required.

Ms. Darling Hill seeks an award of fees for services provided on July 8, 9 and 11, 2013, in the total amount of $2,262. Such services relate solely to the claim objection hearing held on July 11, 2013. As stated above, such fees are denied without prejudice to being later requested upon proper application in the Debtors' Chapter 13 bankruptcy case. Ms. Darling Hill and Ms. Anderson both also seek compensation for time spent reviewing and editing their time records to exclude time for causes of action that were unsuccessful (Ms. Darling Hill: .9 hours on July 30, 2013; Ms. Anderson: 1.5 hours on August 1, 2013, which equates to total fees of $609). The Court agrees with the Defendant that he should not be required to pay for such services. For the same reasons the Plaintiffs were required to omit such time related to easily identifiable causes of action in the underlying litigation, such time is disallowed for preparing the fee application to exclude it. The supplemental fee requests are reduced by $2,871 ($2,262+$609).

Accordingly, taking each of these deductions into consideration, the Joint Application is reduced by a total of $30,639.45. Based on the Court's calculations, the total fees sought (including supplemental fees) equal $190,258.81. After reducing this amount by $30,639.45, the Joint Application is approved in the amount of $159,619.36 in fees and costs of $4,840.15.

///End of Memorandum Decision///